UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **DUANE CARRIER** | **CASE NO. 6:22-CV-02609** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **R P M PIZZA BATON ROUGE L L C ET AL** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |

**MEMORANDUM RULING**

Pending before the Court is a Motion for Summary Judgment [Doc. No. 12] filed by Defendants RPM Pizza Baton Rouge, LLC ("RPM Pizza") and National Fire Insurance Company of Pittsburgh, PA (collectively "Defendants"). Plaintiff Duane Carrier ("Carrier") has filed an Opposition [Doc. No. 16]. Defendants filed a Reply [Doc. No. 17] and a Supplemental Memorandum in Support of their Motion for Summary Judgment [Doc. No. 20].

For the following reasons, the Motion is **GRANTED**.

**I.    BACKGROUND AND PROCEDURAL HISTORY**

On May 18, 2022, Carrier filed suit for personal injuries allegedly arising out of a slip and fall accident on or about May 21, 2021, in the 16th Judicial District Court, St. Mary Parish, Louisiana.[1] The suit was properly removed to this Court on August 11, 2022, on the basis of diversity jurisdiction.

On or about May 21, 2021, while it was raining, Carrier and his coworkers were eating lunch at Tampico's restaurant in Bayou Vista, Louisiana. Carrier knew that it was raining outside.[2] After eating lunch, the men went out to the parking lot to "view and 'poke fun' at one another's

---

[1] [Doc. No. 1-1]
[2] [Doc. 12-3, p. 9]

tires."³ One man's vehicle was parked at the very edge of the Tampico's parking lot, which was right next to a Domino's⁴ parking lot. The men stepped away from the Tampico's parking lot and into the area of the Domino's lot that "was not in fact used for parking; it is instead a far corner of the lot on which cars drive when leaving the Domino's drive-through window."⁵ The reason the men entered the Domino's parking area was to obtain a better view of one of the men's tires.

Carrier testified in his deposition that there was standing water in the lot that was "probably an inch deep."⁶ He further stated that the "whole entire area was nothing but water."⁷ He also testified that at this point the rain was stopped or nearly stopped.⁸ Nevertheless, Carrier stepped into the standing water. Carrier stated that he then, "stepped over the curb. I took two to three steps. And when I went to turn to look at [his] car is when I slipped. And the co-workers were immediately right behind me planting their feet saying, wow, it's full of algae[.]"⁹ Carrier claims that the combination of the slimy algae and standing water on top of it are what caused him to fall.¹⁰ None of his coworkers fell while standing in the same location.¹¹ Carrier also testified that it was likely that the rain water had an effect on making the ground slippery, and without the rain, the spot in the Domino's lot would likely have not been slippery.¹²

The Defendants filed the instant motion followed by a supplemental motion. The original Motion for Summary Judgment alleges that Carrier cannot meet his burden of proving that the complained-of condition presented an unreasonable risk of harm because it was obvious and

---

³ [Doc. Nos. 12-1, 12-3, p. 4]
⁴ Defendant RPM Pizza Baton Rouge, LLC, is the Domino's franchisee that operates the Domino's restaurant and the parking lot adjacent to the Tampico's parking lot.
⁵ [Doc. No. 12-1]
⁶ [Doc. No. 12-3, p. 8]
⁷ [Id.]
⁸ [Id.]
⁹ [Id., p. 16]
¹⁰ [Id., p. 17]
¹¹ [Id., p. 16]
¹² [Id., p. 19]

apparent.[13] In Defendants' supplemental motion, they argue that although the original contention for why summary judgment should be granted changes in light of *Farrell v. Circle K Stores, Inc..* 2022-00849 (La. 3/17/23), 2023 WL 2550503, Carrier still cannot provide factual support for the breach of duty element of his claim.[14]

In opposition, Carrier argues that whether an open and obvious condition presents an unreasonable risk of harm such that liability may be imposed is not a determination of whether a duty exists, which is a question of law, but is rather a question of whether that duty was breached, which is a question of fact.[15] Carrier argues, therefore, that a genuine issue of material fact exists as to whether a duty was breached here because the alleged liability arises from an open and obvious condition.[16]

The issues are briefed, and the Court is prepared to rule.

## II. LAW AND ANALYSIS

### A. Summary Judgment

Under Federal Rule of Civil Procedure 56(a), "[a] party may move for summary judgment, identifying each claim or defense or the part of each claim or defense on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992); *see also* FED. R. CIV. P. 56(c)(1) ("A

---

[13] [Doc. No. 12-1]
[14] [Doc. No. 20]
[15] [Doc. No. 16]
[16] [Id.]

party asserting that a fact cannot be . . . disputed must support the assertion by . . . citing to particular parts of materials in the record...").

A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. However, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citing *Anderson*, 477 U.S. at 248).

Note that "a district court has somewhat greater discretion to consider what weight it will accord the evidence in a bench trial than in a jury trial." *Matter of Placid Oil Co.*, 932 F.2d 394, 397 (5th Cir. 1991); *see also Nunez v. Superior Oil Co.*, 572 F.2d 1119, 1124 (5th Cir. 1978) ("If decision is to be reached by the court, and there are no issues of witness credibility, the court may conclude on the basis of the affidavits, depositions, and stipulations before it, that there are no genuine issues of material fact, even though decision may depend on inferences to be drawn from what has been incontrovertibly proved . . . . The judge, as trier of fact, is in a position to and ought to draw his inferences without resort to the expense of trial.").

4

### B. Louisiana Civil Code Articles 2317 and 2317.1

Louisiana Civil Code Article 2317 states: "We are responsible, not only for the damage occasioned by our own act, but for that which is caused by ... things we have in our custody." Louisiana Civil Code Article 2317.1 provides, in part:

> The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.

Whether a claim arises in negligence under Article 2315 or in premises liability under Article 2317.1, the traditional duty/risk analysis is the same.

Under the duty/risk analysis, the plaintiff must prove five separate elements: (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of duty element); and, (5) proof of actual damages (the damages element). *Id.* (citing *Boykin v. Louisiana Transit Co., Inc.*, 96-1932, pp. 8-9 (La. 3/4/98), 707 So.2d 1225, 1230). If the plaintiff fails to prove any one element by a preponderance of the evidence, the defendant is not liable. *Id.* (citing *Mathieu v. Imperial Toy Corp.*, 94-952, p. 4 (La. 11/30/94), 646 So.2d 318, 322).

"Whether the defendant owed the plaintiff a duty is a legal question for the court to decide." *Jones v. Stewart*, 203 So.3d 384, 390 (La. App. 4 Cir. 10/5/16), *writs denied*, 2016-1967, 2016-1962, 2016-1968. "Absent a duty to the plaintiff, there can be no actionable negligence and, hence, no liability." *Id.*

5

At trial, Carrier would bear the burden of proving the elements of his claims against Defendants. Thus, for Defendants to prevail on summary judgment, they are required to show an absence of factual support for any of the elements of Carrier's cause of action.

### C. Analysis

The Court agrees with Defendants that Carrier cannot establish the breach element of this claim. In Defendants' original Motion for Summary Judgment, they argued that the open and obvious hazard affected both the duty and breach of duty elements, which the *Farrell* case indicated is not a correct interpretation of the law. More specifically, the court in *Farrell* determined that the plaintiff's knowledge of the hazard is appropriate for assessing fault, but it is not determinative in summary judgment proceedings. The *Farrell* court went on to say that "Summary judgment, based on the absence of liability, may be granted upon a finding that reasonable minds could only agree that the condition was not unreasonably dangerous; therefore, the defendant did not breach the duty owed. In such instance, the plaintiff would be unable to prove the breach element at trial." *Id*. at 13.

#### 1. Duty/Risk Analysis

The existence of a duty is a question of law. *Malta v. Herbet S. Hiller Corp*, 21-00209, p. 16 (La. 10/10/21), 333 So.3d 384, 398, citing *Posecai*, 752 So.2d at 766. The inquiry is whether the plaintiff has any law (statutory, jurisprudential, or arising from general principles of fault) to support the claim that the defendant owed him a duty. *Id.*, citing *Faucheaux v. Terrebonne Consol. Gov't*, 615 So.2d 289, 292 (La.1993).

Here, Article 2317 and 2317.1 are the sources of the duty owed. In general, the rule is that the owner or custodian of a property has a duty to keep the premises in a reasonably safe condition. The owner must discover unreasonably dangerous conditions on the premises, and

that owner must then either correct the condition or warn patrons of the existence of the condition. In accordance with the court's finding in *Farrell*, and the similarities between that case and the case at bar, the Court finds here that Defendants owed such a duty to Carrier.

### 2. The Breach of Duty Element

Whether there was a breach of the duty owed is a question of fact or a mixed question of law and fact. *Boykin*, 707 So.2d at 1231. Courts in Louisiana employ the risk/utility balancing test in order to make this determination. *Chambers v. Village of Moreauville*, 11-898, p.5 (La. 1/24/12), 85 So3d 593, 597-98. The risk/utility balancing test can be broken down into four factors: (1) the utility of the complained-of condition; (2) the likelihood and magnitude of harm, including the obviousness and apparentness of the condition; (3) the cost of preventing the harm; and (4) the nature of the plaintiff's activities in terms of social utility or whether the activities were dangerous by nature. *Dauzat v. Curnest Guillot Logging, Inc.*, 08-528, p. 5 (La. 12/2/08), 995 So.2d 1184, 1186-87 (per curiam); *Hutchinson v. Knights of Columbus, Council No. 5747*, 03-1533, pp. 9-10 (La. 2/20/04), 866 So.2d 228, 235; *Pitre v. Louisiana Tech Univ.*, 95-1466, pp. 11-15 (La. 5/10/96), 673 So.2d 585, 591-93.

The four factors will be analyzed below.

### (1) The utility of the complained condition

The alleged defect, the algae and sitting water, was not intended or present by design, considering this is a drive-through in a parking lot. If the algae and water were intended to be there, it would serve some sort of social utility, and in the balancing test, this would weigh against a finding that the premises was unsafe. The Court finds that there is no evidence here that the algae and sitting water were intended to be there, and the Court further finds that there was not any utility to its presence in the parking/drive-through area of Tampicos or Dominos.

The Court finds that this factor weighs in favor of Carrier.

### (2) The likelihood and magnitude of the harm, including the obviousness and apparentness of the condition

This factor considers the degree to which the condition will likely cause harm. If it is found to likely cause harm, this finding weighs in favor that the condition is unreasonably dangerous. If it is unlikely to cause harm, then that weighs in favor of it not being unreasonably dangerous. The magnitude of the harm considers whether the condition presents a risk of great or small injury, including the likelihood of each. The likelihood and magnitude of the harm includes a consideration of the open and obviousness of the condition. In this case, it is undisputed that it was raining on the day of the incident, resulting in standing water approximately one inch in depth in the drive-through area of the Domino's restaurant. There was also algae sitting at the bottom of the puddle, which was likely not apparent until stepping into the puddle and feeling how slippery the area was.

It is conceivable that an allegedly hazardous condition, such as the one in this case, located at the entrance of a restaurant, could be unreasonably dangerous; however, that same condition, located in the corner of a parking lot or not even in a parking area, may not be unreasonably dangerous because the likelihood and magnitude of harm is different. It is extremely relevant to this case that the puddle of sitting water was located in an area of the Domino's restaurant that is used by patrons in vehicles when they exit the drive through after getting their to-go orders. It was also not even a part of the Tampico's restaurant parking lot, which is where Carrier was a patron. Therefore, this puddle was not located in a customarily traversed area, as compared to the front door of either restaurant.

As stated by the court in *Farrell*, it is inaccurate to say that a defendant generally does not have a duty to protect against open and obvious conditions. There is a duty to exercise

reasonable care and to keep that which is within the patron's custody free from an unreasonable risk of harm. If the application of the risk/utility balancing test results in a determination that the complained of hazard is not an unreasonably dangerous condition, a defendant is not liable because there was no duty breached. As previously stated above, the beach of duty element involves a mixed question of law and fact, but this does not preclude summary judgment. Summary judgment may be granted if reasonable minds could conclude that the condition was not unreasonably dangerous, which would result in the defendant not breaching the duty owed. In this instant, the plaintiff would be unable to prove the breach element at trial. *Farrell*, 2022-00849, at 13.

Defendants point out many facts that point to Carrier's awareness of the standing water in the Domino's restaurant lot. For a hazard to be considered open and obvious, it must be one that is open and obvious to all who may encounter it. The open and obvious concept addresses whether the complained of condition is apparent to any reasonable person who might encounter it. If so, that reasonable person would avoid it, and the factor will weigh in favor of finding the condition not unreasonably dangerous. Whether the plaintiff has knowledge of the condition is irrelevant in determining whether the thing is defective. The plaintiff's knowledge is appropriately considered in assessing fault but is not appropriate for summary judgment proceedings. Therefore, as applied to this case, Carrier's knowledge and appreciation of the allegedly hazardous condition is not determinative. Although it would be relevant in a trial on the merits, for purposes of potential comparative fault, Carrier's awareness is irrelevant to Defendants' entitlement to summary judgment.

As it applies to the magnitude of harm, because this sitting water was only present due to the rain on this particular day, it is unlikely that on a dry and sunny day, anyone who would

9

encounter this area of the Domino's lot would not look at it and conclude that it presents a likelihood of great harm.

After considering this particular set of facts, including the location of the water, the likelihood that the water was only present because it was raining for most of the day, the size of the puddle, and the fact that the condition was apparent to anyone who may encounter it, the likelihood and magnitude of harm is minimal.

### (3) The cost of preventing the harm

There is no way for the Court to assess the cost of preventing the harm here, as the condition was the result of rain. Therefore, the Court will not and cannot consider this factor in the risk/utility balancing test.

### (4) The nature of Carrier's activities in terms of social utility or whether the activities were dangerous by nature

This factor considers the nature of the plaintiff's activities in terms of social utility or whether the activities were dangerous by nature. Carrier was simply shooting the breeze with his coworkers in the parking lot and making fun of their vehicles when the incident occurred. There is no social utility in hanging out with friends and it is certainly not dangerous in nature. Therefore, the nature of Carrier's activities does not weigh heavily as a consideration in determining whether an unreasonably dangerous condition existed.

For these reasons, the Court finds that after applying the risk/utility balancing test, the allegedly hazardous condition, whether that was the standing water or algae within the water, was not an unreasonably dangerous condition. Defendants have met their initial burden of pointing out the absence of factual support for the breach element of Carrier's claims. The burden then shifted to Carrier to establish the existence of a genuine issue of material fact and/or that

Defendants are not entitled to judgment as a matter of law. Carrier has failed to do so, and summary judgment in favor of Defendants is mandated.

### 3. The Cause-in-Fact Element, the Scope of the Duty Element, and the Damages Element

In accordance with the Court's ruling above that Defendants did not breach a duty, the Court finds that it is not necessary to analyze the remaining negligence elements.

### III. CONCLUSION

For the reasons set forth herein,

**IT IS ORDERED, ADJUDGED, AND DECREED** that the Motion for Summary Judgment [Doc. No. 12] filed by Defendants RPM Pizza Baton Rouge, LLC and National Fire Insurance Company of Pittsburgh, PA, is **GRANTED**. Plaintiff Duane Carrier's claims against Defendants are hereby **DISMISSED WITH PREJUDICE**, at the cost of Plaintiff.

MONROE, LOUISIANA, this 5th day of May 2023.

Terry A. Doughty
United States District Judge